FRANK L. CORRADO, ESQUIRE
JOSHUA A. DONOHUE, ESQUIRE
BARRY, CORRADO, GRASSI & GIBSON, P.C.
2700 Pacific Avenue
Wildwood, NJ 08260
Phone (609) 729-1333 Fax (609) 522-4927
fcorrado@capelegal.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ORION GRAY,<br><br>        Plaintiff,<br>vs.<br><br>TOWNSHIP OF POHATCONG, FRANCESCO PAGANO, ROBERT N. PAULUS, JR., JOHN DOES 1 THROUGH 5,<br><br>        Defendants. | CIVIL ACTION<br><br>Case No.:<br><br>COMPLAINT |

ORION GRAY, by way of complaint against defendants, hereby avers:

I.  **PARTIES**

1.   Plaintiff Orion Gray is an adult individual, residing at 725 North 11th Street, Allentown, Pennsylvania.

2.   Defendant Township of Pohatcong is a governmental entity organized under the laws of the State of New Jersey, with offices at 50 Municipal Drive, Phillipsburg, New Jersey.

3.   Defendant Francesco Pagano is an adult individual and citizen of New Jersey, residing at 70 Mountain Road, Alpha, New

1

Jersey.  At all relevant times he was an officer in the Pohatcong Township Police Department ("PTPD").  He is sued in his individual capacity.

4.    Defendant Robert N. Paulus, Jr., is an adult individual and citizen of New Jersey, residing at 321 South 4th Street, Phillipsburg, New Jersey.  At all relevant times he was an officer in the Pohatcong Township Police Department.  He is sued in his individual capacity.

5.    Defendants John Does 1 through 5 are superior officers or employees of Pohatcong Township, precise identities currently unknown.  They are in charge of the administration of the PTPD, handling evidence, and coordinating with the Warren County Prosecutor's Office.  They are sued in their individual and official capacities.

## II.  <u>JURISDICTION</u>

6.    This suit arises under the United States Constitution and the laws of the United States and is brought pursuant to 42 U.S.C. §1983, together with pendent state constitutional claims.

7.    The Court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. §1331, as an action arising under the Constitution of the United States, and 28 U.S.C. §1343(a)(3), to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States;

2

and over plaintiff's pendent state constitutional law claims pursuant to 28 U.S.C. §1367.

8.   The Court has authority to award costs and attorney's fees pursuant to 42 U.S.C. §1988.

9.   Venue is properly laid in the District of New Jersey, pursuant to 28 U.S.C. §1391(b), because all defendants reside in this district, and the events giving rise to this claim occurred in this district.

III.  <u>**SUBSTANTIVE ALLEGATIONS**</u>

10.   On the evening of January 9, 2007, Gray was traveling on Route 22 in Pohatcong Township, New Jersey.  He was driving his wife's car.  Unbeknownst to Gray, his wife – a federal immigration officer - had concealed a handgun under the backseat cushions of the car.  She had found the weapon in New York, and had not yet had the opportunity to return it to a law enforcement agency in that jurisdiction.

11.   Gray's motor vehicle was pulled over by defendant Pagano for having an expired license.  A video camera in Pagano's patrol vehicle captured and recorded the officer's interactions with Gray during the stop.

12.   During the course of the motor vehicle stop defendant Pagano received notice that Gray was wanted on a warrant in a neighboring municipality.  Pagano advised Gray of the

3

outstanding warrant, had him exit his vehicle, and placed him under arrest.

13.  While Pagano was placing Gray under arrest, defendant Paulus of the Pohatcong Township Police Department arrived on scene.

14.  While Gray was handcuffed, standing on the side of Route 22 with officer Paulus, defendant Pagano elicited a consent to search Gray's vehicle.  That consent was not knowingly or voluntarily given.  In addition, Pagano's request for consent itself was improper, because he did not have a reasonable and articulable suspicion that the search would reveal evidence of criminal activity.

15.  After two minutes and twenty-three seconds of searching through Gray's vehicle, Pagano produced a loaded Raven Arms .25 caliber handgun; this was the weapon Gray's wife had hidden from plain view by wedging it between the backseat cushions of Gray's vehicle.

16.  Upon being confronted with the gun, Gray asked, "Where was that?"  To which Pagano replied, "In the back seat."

17.  Gray was transported to the Pohatcong Township Police Department for processing.  He was charged with several motor vehicle and criminal violations, including unlawful possession of a weapon, in violation of N.J.S.A. 2C:39-5(b).

18.   Throughout his prosecution Gray was represented by
Raymond S. Santiago, Esquire, of the Law Offices of Santiago &
Associates, P.C., 76 West Main Street, Suite 104, Freehold, New
Jersey.

19.   On March 6, 2007, Mr. Santiago sent a letter to the
Warren County Prosecutor's Office requesting a copy of any video
recordings from Pagano's vehicle for the State v. Orion Gray
matter.  On March 8, 2007, Mr. Santiago made an oral request for
the same.  He was told that no video tape recording existed in
the Gray matter.

20.   On May 7, 2007, Mr. Santiago was told a second time
that no such tape existed.  On August 8, 2007, Mr. Santiago
again requested the State provide any video from Pagano's patrol
vehicle depicting the incident in question; and he was again
told no such tape existed.

21.   A video recording from Pagano's vehicle, depicting the
defendant's interactions with Gray, did exist during this entire
period.  Santiago was not made aware of the tape until January
2008.

22.   On May 16, 2007, Grand Jury proceedings were held in
State v. Gray.  After being duly sworn, defendant Pagano
testified that after removing Gray from his car he advised him
that he saw a box cutter in his center console and was going to

5

remove it for his safety.  This conversation does not appear on the video tape.

23.  Pagano further testified that while he was reaching in to grab Gray's box cutter, cell phone, and an envelope containing cash, he saw the handgun in plain view.  This testimony contradicts what is shown on the video tape.

24.  At the grand jury, assistant Warren County Prosecutor Steven M. Seigel, Esquire, attempted to further clarify how Pagano came to be in Gray's car:  "So, you went back with the sole purpose of retrieving what you had already seen?"  To which Pagano replied in the affirmative, "Um-hum".  This testimony also contradicts the video tape.

25.  Pagano testified that Gray stated, "I didn't know there was a gun in the backseat!" without being told the gun was found in the backseat.  Pagano elaborated on this point by stating Gray was behind Pagano's patrol vehicle during the search and therefore could not have seen from where Pagano had retrieved the gun.  This testimony contradicts what is shown and heard on the video tape.

26.  In his grand jury testimony, Pagano never mentioned the arrival of Officer Paulus, who can be seen in the video standing with Gray as Pagano searches through Gray's car.

27.   After hearing Pagano's testimony the Grand Jury indicted Gray on May 16, 2007.

28.   On August 27, 2007 a suppression hearing in <u>State v. Gray</u> was held in the Superior Court of Warren County, Law Division, Criminal Part.  After being duly sworn Pagano again testified to having advised Gray he was going into his vehicle to retrieve the box cutter for safety reasons; to which Gray replied, "Go ahead, also please take my cell phone and money form the center console."

29.   Pagano described what happened next:  "I went inside the vehicle, the front door was open, I removed a cell phone, a white envelope containing some money.  And as I illuminated the interior of the car I saw the butt of a handgun."

30.   When asked by the Hon. John H. Pursel, J.S.C., if he was looking for anything in the back seat Pagano replied, "I wasn't looking for nothing."  When asked by Mr. Santiago on cross examination if he had any difficulty seeing the butt of the gun, if he had to search at all, Pagano replied, "No, I did not.  I didn't search the vehicle."

31.   Pagano again testified Gray made the spontaneous statement "I did not know there was a gun in the back seat!"

32.   While testifying in both the grand jury hearing and the suppression hearing, Pagano relied on a Pohatcong Township

Police Department Complaint Report he wrote two days after the incident.

33.  Gray's motion to suppress was denied on September 24, 2007.  His defense attorney was still relying on representations made by the Pohatcong Police Department that no video tape of the incident existed.

34.  On January 23, 2008, the Superior Court granted the State's notion to dismiss the <u>State v. Gray</u> because of newly discovered evidence - specifically, the video recording of the incident requested by Mr. Santiago numerous times.  The video from Pagano's patrol vehicle came to light only after Santiago subpoenaed defendant officer Paulus; and it was discovered in his files.

35.  For over one year, defendants Pagano, Paulus and John Doe defendants, under procedures established and administered by John Doe officers and employees of Pohatcong Township, were successful in keeping Gray's prosecution alive; while suppressing the video that contradicted Pagano's sworn testimony, and showed an illegal and unconstitutional search.

36.  On June 19, 2008, defendant Pagano was indicted on four counts of official misconduct, two counts of perjury, and one count of falsifying or tampering with public records.  These charges arose from Pagano's arrest of Gray.

8

37.   The actions of defendants were taken under color of state law.

38.   The actions of defendants, including those of John Doe superior officers and employees, were done in accordance with an official policy, practice and procedure of the township, specifically the failure of its police department to adequately train and supervise its officers, in deliberate indifference to the constitutional rights of Mr. Gray and other criminal arrestees and defendants.

COUNT I

(Fourth and Fourteenth Amendment Violations
– Individual Defendants)

39.   Plaintiff incorporates the averments of paragraphs 1-38 as if fully set forth.

40.   Gray has rights, protected by the Fourth Amendment to the federal constitution, made applicable to the states through the Fourteenth Amendment, against false, baseless, malicious and arbitrary detention and prosecution on criminal charges, and against arbitrary deprivations of his liberty and property.

41.   The actions of defendants in this matter, in falsely and maliciously detaining and prosecuting Gray as outlined above violated those rights, in that those actions were undertaken in a misbegotten attempt to conceal an unconstitutional search of Gray's car and to prolong the prosecution based on that search.

9

42.  The actions of defendants were willful, deliberate, malicious, and taken under the color of state law.

43.  The actions of defendants deprived Gray of his rights under the fourth amendment to the Constitution.

44.  As a proximate result of defendants' conduct, Gray has been injured in that he was deprived of those rights, was falsely prosecuted without adequate basis, and was caused to suffer physical, mental, and emotional distress.

COUNT II

(Fourth and Fourteenth Amendment Violations
– Township of Pohatcong)

45.  Plaintiff incorporates paragraphs 1-44 as if fully set forth.

46.  One function of defendant Township is the administration of the Pohatcong Township Police Department.  As noted above, the Township has a policy, practice or custom of failing to adequately train, supervise, and discipline officers and employees of its police department.

47.  In accordance with that policy, practice, or custom, the Township failed to adequately train, supervise, and discipline Sergeant Pagano, officer Paulus, and John Doe officers and employees of the police department who participated in the investigation and prosecution of Mr. Gray, in a fashion that was deliberately indifferent to the Mr. Gray's rights.

48.   The policy, practice, or custom as alleged violated Gray's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

49.   As a proximate result of this failure to adequately train, supervise, and discipline, Gray was injured and has suffered damages as set forth above.

COUNT III

(State Constitutional Violation under Article I, par. 7)

50.   Plaintiff incorporates the averments of paragraphs 1-49 as if fully set forth.

51.   Gray brings this claim directly under the New Jersey Constitution, and also pursuant to N.J.S.A. 10:6-2(c).

52.   Gray has rights, protected by Article I, paragraph 7 of the New Jersey state constitution, against false, baseless, malicious and arbitrary detention and prosecution on criminal charges.

53.   The actions of the defendants in this matter, in falsely and maliciously prosecuting Gray as outlined above, violated those rights, in that those actions were undertaken in a misbegotten attempt to conceal their unconstitutional search of Gray's car and to prolong the prosecution based on that search.

54.   As a proximate result of defendants' actions, Gray was deprived of his rights under the state constitution as set forth above, and has suffered physical, mental, and emotional injury.

WHEREFORE, plaintiff demands judgment in his favor and against defendants as follows:

A.   For compensatory damages;

B.   For punitive damages;

C.   For a declaration that plaintiff's federal and state constitutional rights have been violated.

D.   For attorney's fees and costs pursuant to 42 U.S.C. §1988 on his federal claims and N.J.A.C. 10:6-2(d) on his state claims.

E.   For all other appropriate relief.

BARRY, CORRADO, GRASSI, & GIBSON, P.C.


s/ Frank L. Corrado
Dated:    12/2/08      FRANK L. CORRADO, ESQUIRE


DEMAND FOR JURY TRIAL

Trial by jury is demanded on all issues.

BARRY, CORRADO, GRASSI & GIBSON, P.C.

DATED:                 _s/FRANK L. CORRADO
             12/2/08      FRANK L. CORRADO, ESQUIRE

12